Nash, Follett, and Richardson Good morning, your honors. May it please the court, Jess Galizer for appellants Brown, Nash, Follett, and Richardson. I'd like to reserve five minutes for rebuttal. And I probably should have been an auctioneer, not an attorney, so if I speak too quickly, please tell me to slow down. This is an interlocutory appeal of the district court's denial of summary judgment for qualifying immunity for four police officers involved in a five-minute traffic stop that was recorded on video. It started when Lt. Brown transposed the numbers 47 and 74 and ended as soon as he realized it was a mistake. And a mistake might be sufficient for a negligence claim, thank you, but it's not sufficient for a constitutional claim, which is all that Mr. Sims pled. Regarding constitutional claims, denial of qualified immunity is immediately appealable where it turns on an issue of law, and those issues of law are subject to de novo review by this court. Today, I intend to address three of the legal errors that the district court made. The first is that there is insufficient evidence to raise a genuine issue of material fact as to Mr. Sims' equal protection claims. The second is that the district court improperly shifted the burden of proof to establish qualified immunity onto defendants. And the third is that the district court failed to make a fact-specific, individualized assessment of qualified immunity as required. Can I ask you just, at the beginning, you said that this incident ended as soon as they found out the mistake about the license plate, but I had understood that the trunk search happened after. So if you watch the video, the Lt. Brown, at the time dispatch comes back to confirm, Lt. Brown figures out what he's done wrong. Yes, the trunk search does occur after. That being said, there's no evidence that Officer Richardson heard dispatch at that time. And when you watch the video... But Officer Brown could have yelled, stop. We just learned he's not the right guy. Don't search his trunk. Officer Brown could have done that, but I don't know that the Fourth Amendment requires that sort of intervention, particularly when you look at cases like Tumen, where for the integral participant theory, there was a supervisor who was in a place where he could have seen something. He could see that they were searching the trunk. In fact, I thought there was like a discussion about, we're going to search the trunk, because the SIMS said, what are you doing? And they said, well, we're just going to search the trunk, something like that. Didn't SIMS interrupt him and say, excuse me? Yes, he did. He said, what are you doing? And he said, we're turning it off. So this actually happened before the trunk check occurred. The only conversation, the only spoken word with regard to the trunk is Officer Richardson saying, should we check the trunk? And nobody responds to him. But why doesn't Brown say no? Because there's no evidence that he heard him. They're standing something like 20 feet apart. They're talking to Mr. SIMS while that's happening. And when you watch the video, there's actually a lot of extraneous noise from other members of the public. Interestingly enough, the seagulls are extremely loud. At least there's a fact dispute in SIMS's favor at this point, that the trunk search happened after they knew that the license plate was wrong. I don't think there's a fact dispute as to that, because there's no evidence that Officer Richardson knew that. But counsel, I was going to say that. I appreciate it was noisy and there's the one person who keeps putting their hands up. It's kind of a chaotic scene. I mean, it's 7-11 at five in the morning. But whether someone heard something or not, that's for a jury to decide. And at this stage, don't we have to assume that Mr. SIMS's version of the facts are controlling and that everyone was aware of everything that was going on? Don't we have to assume that now? Even if you do assume that, I don't think that makes a difference, because the analysis is a reasonable officer in Officer Richardson's position. What Officer Richardson would know. But if Brown, we have to assume Brown can see Officer Richardson, sees him opening the trunk and Brown knows the license plate is wrong. So at least for Brown, I think, I don't see how you get this with taking facts in SIMS's favor. Or at a minimum, they could say, hold on a second, don't open it yet. We're just clarifying this license plate thing. I mean, it seems to me that that's what they're going to say. And so we're stuck with the facts. We're stuck with their facts. So if their facts are not great, unfortunately, for the officer, what do we do in this situation? Yeah, I mean, I certainly don't think that this is an ideal situation in retrospect. But Fourth Amendment analysis for qualified immunity isn't the hindsight that isn't 20-20 hindsight. And so the analysis really is, what would a reasonable officer do in Officer Richardson's position? Well, I'm asking about Brown. What would an officer do in Officer Brown's position when he just learned this guy is not a stolen car and he sees the other officers opening the trunk? Well, again, there's no evidence that he sees the officer opening the trunk. But that is the thing in their favor. So let's take for a minute that he did see in their favor. Okay, so assuming that he sees it, that might speak to whether or not Lieutenant Brown is entitled to qualified immunity regarding Officer Richardson's conduct. But again, because the trial court didn't engage in this individualized analysis... That's a different question. Yeah. Okay. And I have a lot of questions for them about that. But I think you're asking about Officer Brown. Yeah. I mean, is there any argument that Officer Brown, if we assume he saw that they were about to search the trunk and he knows already about the license plate, is there any argument that he should have qualified immunity? Because I don't see it. Yeah, I think so. If you look at Hopkins v. Bonvonsino, in that situation, the supervising officer was in a location where he could observe subordinate officers engage in alleged constitutional violation. And the trial court held that that was not sufficient for an integral participant theory of liability. Does that answer the court's question? I mean, I'll have to look at that case and see if it's different. I can't... That's all I can say for now. Did you want to talk about the individualized issue? Because I think that one, I think, is a problem. Sure. I'm happy to jump to that. As you've noted, analysis of qualified immunity is an individualized issue that is fact-specific. And the court simply didn't do it at all. So, as an example, looking at Officer Nash, there is no clearly established case law that pointing a firearm without something more constitutes excessive force. The district court cites Thompson to deny all of the officer's motion for summary judgment on qualified immunity. But in Thompson, a firearm was pointed directly at a person after he had been searched for weapons. The person who pointed his firearm at Mr. Sims was from behind a patrol vehicle before Mr. Sims had been searched for weapons. Given that we understand from cases like Hopson and Rivas-Villegas, the video indisputably showed the clear establishment of a right is fact-specific, particularly for the Fourth Amendment. And so the distinction between a suspect who has been checked for weapons and one who has not is critical. Therefore, even if you accept Mr. Sims' allegation that Officer Nash pointed his firearm at him, he's still entitled to summary judgment. Similarly, Lieutenant Brown's conduct reviewed in isolation amounts to ordering Mr. Sims out of his vehicle with his firearm drawn but not pointed. And for both of those two incidents, those are constitutional under Pennsylvania v. Mims and city of Foster v. Indio. But the trial court's lack of individualized analysis failed to address that nuance, that what you're really looking at is what is Lieutenant Brown's conduct in specific regard to Lieutenant Brown and the clearly established right relative to that conduct. But do you agree that Lieutenant Brown was essentially the supervisor on the scene, so he is responsible for what the other officers did too? He's the most senior officer on scene. But I don't think that that automatically means that he's the supervisor. And even if it does mean that he's the supervisor, that doesn't mean that there is suddenly a respondent superior theory of liability here. When you talk about supervisory responsibility, there has to have been some act, you know, a failure to train, a deliberate indifference to a sort of conduct. And there's no evidence in the record that any of that had happened. All there really is is that Lieutenant Brown is a lieutenant. Well, they're acting together and he has essentially initiated this high-risk stop, is it called? Yes. So he, I mean, I think there was some testimony that a high-risk stop is going to involve drawing weapons. And if that's true, if we also assume that for him, it was unreasonable to think this was a stolen car, so all they're doing is stopping someone for a light problem, then how is it okay for Brown to think that they can draw weapons on someone whose headlights are off? Well, again, if you look at City of the Indio or a number of other cases, Girard v. New York is actually a Second Circuit case in 2021. So very recently pointing out that U.S. Supreme Court has not established that a threat plus a display of firearm equals excessive force. And so even in that case, you have display of firearm plus a threat and here, like, the officer was threatening the person that he was going to shoot him. That didn't happen here. And so even if you're saying that at the point at which officer or Lieutenant Brown radioed for assistance to have other officers respond, he had some expectations that their weapons would be drawn, there's no clearly established case law that says that drawing firearms is excessive force, even for a simple traffic stop. So you think it's okay to pull someone over because their blinker isn't working and pull a gun on them? Well, I think okay is a different analysis than the Fourth Amendment. That may certainly have a negligence, but that doesn't mean that it's a constitutional violation. Let me ask you something. I know you want to reserve your time, but let's just say we disagree with you on Officer Brown, but we think that as to the other officers, there was no individualized analysis. What should we do? Well, I think at a minimum, courts should remand for that individualized analysis, but we would ask that the court, because review is de novo, undertake that itself or at the very least provide some guidance to the district court about what questions need to be asked and what assessment needs to be provided. And why would we remand for the individualized analysis instead of doing it ourselves? It seems like we're in an equally good position to do it as the district court. You certainly are. I only suggest that remand alone is an option because that's a step the court has taken before, recently in Mondragon. However, like take Officer Follett as an example. He was basically uninvolved. He walked around a car. It seems super easy that the court can just summarily address that issue, and that would certainly be in the interest of judicial economy. All right. Do you want to reserve? Yes, I do. Thank you. Your Honor, and may it please the Court, Nathaniel Flack for the appellee, Anthony Sims. If it pleases the Court, I'll begin by addressing some of the issues that Appellant's Counsel was just talking about. First, on the question of the timing of the vehicle search, there obviously, there is a dispute of fact, at a minimum a dispute of fact, that all the officers were aware of what was going on and were aware that dispatch had already cleared the plate. All the officers' testimony shows had radios. Information from dispatch was put out over the radio. And so the court does have to assume that Brown and everyone was aware that there was any purported suspicion had dissipated and any search of the vehicle was illegal. And I would also just add on that point that there's no basis in the law for, even if there was some reasonable suspicion, for a search of a vehicle based on reasonable suspicion. That doesn't exist. There's no assertion that there was probable cause here. And so the search of the car is illegal under any conceivable analysis. So you're saying even if Richardson didn't know that it had been cleared, he had no authority to open that trunk? That's right, Your Honor. There is no exception to the warrant requirement that authorizes a warrantless search of a trunk, a locked trunk, without probable cause. And the Knowles v. Iowa and the court's discussion began to clearly establish that, as well as cases of this court that the district court relied on. With respect to the individualized analysis, I will plan to focus on the three officers other than Brown. But we'll address any questions about Brown as well. And with respect to Nash, Richardson, and Follett, I think this case is easier on a personal participation basis than appellants have made it out to be. Defendant Nash, appellants conceded for the purposes of appeal, and the video shows beyond any real dispute, pointed a gun at Mr. Sims. This Court's cases, Thompson and Espinoza, hold quite clearly that pointing a gun at somebody who is compliant and poses no danger violates the Fourth Amendment. That is clearly established. And under the factors that this Court set forth in Washington v. Lambert and applied in basically identical circumstances in Green, there was no basis to believe that Mr. Sims posed any danger. He was fully compliant. Lieutenant Brown put his compliance out over the radio for all officers to hear. There was no information whatsoever. He was armed. Lieutenant Brown had him lift up his jacket prior to the guns being pointed and turn around 360 degrees in a circle. And the other two factors of Green, there was no information that any kind of violent crime or any crime had recently been committed. Well, can I ask about that? Because I think the cases that you're citing, at least Thompson and Robinson and Hopkins, I think, all involved misdemeanors or anything that was going on would have been a very minor crime. But I think from Nash's perspective, Nash is allowed to think, I think, that this is a stolen car. That might be unreasonable for Brown, because Brown is the one who saw the license plate. But Brown says to the other officers, I've got a stolen car. I think we probably have to assume it's okay for Nash to just proceed on the idea that it's a stolen car, which would be a felony. So do any of these cases you're citing say that the fact that the crime is a felony doesn't change the analysis of whether you can have a weapon? Here's why I think the court should not assume that it's reasonable for Nash to believe there's a felony. The testimony of the city's 30B6 witness and of the officers is consistent that the officers know that you need to verify or look into a license plate return over dispatch. That's why Brown— Well, Brown, I totally agree with you. Brown, we can't think he reasonably—in your favor, Brown did not reasonably think this was a stolen car. But the other officers, I don't think it could be a rule that when—if one officer makes a mistake and says this is a stolen car, I mean, that could be wrong for him. But I don't think the other officers are supposed to get to a scene and do their own check or ask him to check it then before they do anything. That can't be right. No, Your Honor, and that's not what we're suggesting. The point I'm trying to make is that Officer Nash, the court has to assume on defendant's motion for summary judgment, heard over the radio that Lieutenant Brown made an inquiry about a license plate. And the officers are trained, according to the city itself, that this is—that you make an inquiry and only based on the results of the inquiry is a high-risk stop appropriate. And this is exactly what this court held in Green. You have to check before you undertake the high-risk stop. And what Lieutenant Brown said over the radio was he used the word possible rolling stolen, and he inquired with dispatch about the status of the plate. And the court also has to infer, and it's clear from the record, that dispatch did not confirm the plate. So at the time that Nash arrives at the scene, the only information that's known to him is a lieutenant has inquired about a plate over dispatch. The lieutenant has then said the person is fully compliant, and defendants contend that with only that information, Nash can arrive at the scene and point a gun at Mr. Sims. And a jury does not have to find that that's reasonable, especially where none of the factors from Green or Washington are present. And this is not a case where the defendants are pointing to some of the familiar things like a bulge resembling a weapon or any of the kind of things they're talking about. And in fact, what Nash said when asked about the basis for pointing a gun was that Mr. Sims was talking back. And I think it's clear on these facts a jury could find that pointing a gun here under Thompson violated the clearly established law and violated the Fourth Amendment. With respect to Richardson's personal participation, there's no dispute that Richardson personally opened Mr. Sims' locked trunk. He conducted what has to be considered a search of the vehicle, and he did so, as we were talking about, with knowledge that the plate had been cleared. That is personal participation. He personally engaged in a constitutional violation. So there's no personal participation issue as to Richardson. And I have a question for you, counsel, on that. And this may seem like an odd question, but I can't see of any ground to open up the trunk because there's not probable cause to search the car. The defendant is not in custody. It's not an inventory search. I'm just trying to understand. I mean, obviously, if the officers thought he understood that they think there may be someone hiding the trunk, that's what they're going to be saying. But I'm just trying to see from what I saw, I didn't see anything to suggest why that was proper. I mean, put your prosecutor's hat on for a second. Help me out here. What would the argument be? I'll ask your co-counsel this, or opposing counsel. What would the argument be to open the trunk? The best I can do to answer that question would be to refer to Officer Richardson's declaration, which I think reveals here, I completely agree, obviously, with the premise of Your Honor's question, but Officer Richardson's declaration and the testimony reveals a very a misunderstanding of the basic premise of the Fourth Amendment on the part of these officers, which is that he contends he can search a trunk just to check whether or not somebody's in there. He doesn't think that there's any reasonable, particularized suspicion necessary to take these actions. And so the idea is, if we don't know, then we can check. If there's uncertainty, it's mere uncertainty or lack of knowledge, according to defendants, that supports not only opening the trunk, but pointing a gun at somebody and all the other things that happened here. And that just gets the whole analysis backwards. So can I ask, I totally agree with you about Richardson and the trunk, but it seems like the district court kind of lumped everyone together and didn't do this parsing. So like, you don't think Richardson is involved in the gun pointing, do you? That's correct, Your Honor. We don't contend Richardson is involved in the gun pointing. But I think those issues, some of the issues that appellants have raised in that respect can be addressed with jury instructions. I mean, the question for this court is whether qualified immunity was properly denied to each officer. And I think that read fairly, the district court analyzed the trunk search as to Richardson and analyzed the gun pointed as to Nash, analyzed the totality of the stop. But I kind of understand the current situation as, at least at the moment, the gun pointing claim goes forward as to Richardson, too. Am I wrong about that? Your Honor, I think that would be an issue that should be probably addressed in pre-trial briefing or a jury question or jury instructions. But why shouldn't that be resolved at summary judgment? Well, I think it could be resolved at summary judgment. And I think that there is a basis to hold all of the officers here liable together for the totality of the stop. The testimony is that this was a joint venture. The officers understood themselves to be participating together in this high-risk stop. They believed themselves to be operating according to some kind of training. They were each aware of the tactics that the other officers had used. And there's evidence. It's disputed, as a matter of fact, whether or not Richardson did point his gun. The video is the most clear, obviously, as to Nash pointing the gun. Mr. Sims' testimony is, and he says this during the incident, he says, why are you pointing guns at me? So there is a dispute of fact about who is pointing a gun exactly. It's most obviously Nash. But I think that a reasonable jury could conclude that multiple guns were pointed at Mr. Sims and that all of the officers are responsible for each of the constitutional violations here. It's also possible that the court could carve the violations and assign them to different officers. I think both of those outcomes would be reasonable. Let me ask you this, counsel. I know you guys want this case to move, right? This case is a 2020 case. And if we were to send it back as to some of the officers to say, hey, you know, we really can't tell who's on the hook for what, is there a way in your district to, in a sense, expedite that? Meaning you draft a proposed findings of facts and conclusions of law and submit it to the district court. Obviously, the other side could object to try to speed this up. Because I know district court judges are very busy. If we were to send it back, I would be concerned that it's going to be 2027 before you guys get a chance to try this case. Is there anything you can do on your end to try to speed that up a little bit? Your Honor, it's not an issue I've looked into procedurally how we might do that. I imagine there might be some way to do it. But I also think that this court can reach the personal participation issue. And the record is fully developed. And there's no reason why this court can't, you know, address that issue fully and remand to the district court to proceed. No, I appreciate that. It's just that this is not the first time this has happened. I mean, the two of us were on Mondragon. And I'm just wondering if it would help everybody if we wrote something saying, in this situation, you actually do need issue an order as to each officer and identify who's on the hook for what. So we can ultimately make the case go faster if we do that to begin with. Instead of now we're all trying to guess who did what and are they hooked for this. I'm just trying to see if we were to do that, how much would that mess up your ability to try to get this case going? There's nothing about what Your Honor has proposed that I think would mess up anything. So I think that an order, you know, clarifying the claims, as Your Honor describes, is fully within the authority of this court. And we happily submit this record for the court's analysis of exactly those issues. And under Boyd, just to return to the precedent briefly, under Boyd and under Blankenhorn, I do think it's a relatively straightforward analysis in this case. And the case that the appellants cite on individualized analysis is the Cunningham case. And I do want to point out it's a very different kind of case that that rule of individualized analysis comes from. Cunningham, that's where they quote from for each defendant individually, has to be addressed by the district court. Cunningham alleged what is best described as a vast conspiracy, which involved city council members, individuals of the city attorney's office, high-ranking law enforcement officers. And it alleged conspiracy to fabricate evidence across multiple incidents by people who weren't present at the scene of these events. And in that circumstance, obviously, this court required the district court to really break it down and say, well, what did each defendant do? This case is very simple compared to that. And I think the great degree of detail about each officer's conduct. And it's not like Cunningham where there's some tentative involvement. These are defendants who were personally there, who personally violated our client's constitutional rights. And the law is clearly established. And so the district court properly denied qualified immunity and should be affirmed. But if we think that, for example, like we've already discussed, Richardson, I mean, it seems like you kind of made an argument, well, maybe he's in a group of people who are pointing guns, but it doesn't seem like Richardson pointed a gun. So if we think Richardson should be off the hook for any excessive force gun pointing claim, are you saying we should clarify that the district court really needed to do that and send it back for the district court to say that before anything more happens? Or are you saying we should just say that at this point? Because it's pretty obvious at this point that that could just be said by us because the record's the same. What are you saying we should do? I would urge the court to reach those issues if they're before it. I don't think that there's any further development of the record or anything like that that needs to be done here. I think this court can and should analyze the personal participation issue to the extent that there is one. I also think the court could remand to the district court as well. I think both of those options are on the table, and neither one is objectionable. And if we were to remand, the district court would do basically the same thing we would do, right? There's no, like, further submission or further testimony or anything that would happen at that point? I believe so, Your Honor. I realize I'm almost out of time. Well, I think technically you are, but go ahead. I'll give you an extra minute. Well, thank you, Your Honor. I just briefly want to touch on the equal protection issue that counsel raised briefly. And we would just rely on Johnson v. Jones, the state of Anderson, and a memorandum disposition recently issued by this court in Bala v. Hendrickson for the proposition that there's no appeal from a denial of summary judgment without an actual legal issue as to qualified immunity, which doesn't exist here. The law is clearly established. With respect to pointing a firearm, the—excuse me, I'm going to skip that, actually. With supervisory liability, we've cited cases in our brief on culpable action or inaction, so I would just direct the court to those cases that we've cited on supervisory liability. And with respect to the Hobson case that was briefly referred to by counsel, that case is distinguishable. It involved an impending crime, a crime that was about to occur. That's a totally different analysis, so that case should be distinguished. And for all the reasons that we've discussed, we ask that the district court be affirmed, and thank you, Your Honor. All right. Thank you very much, counsel. Thank you. So I'd like to start by addressing the equal protection issue. Whether evidence is sufficient to create a genuine issue of material fact is a legal question subject to interlocutory review, and that is explicit on Cunningham v. Gates. And so Mr. Sims's allegation that there's no— I'm not sure that's right. So we have the Anderson case that says the question whether there are sufficient facts for summary judgment is not an interlocutory basis on qualified immunity appeal. You have to only be arguing about whether the law is clearly established. No. I think the Anderson case tells you that whether or not evidence is sufficient to prove something at trial is not subject to interlocutory review, but that's not the same question as sufficiency to create a genuine issue of material fact. So let me give you an example. Mr. Sims puts forward a lot of circumstantial evidence about police reports involving warrant arrests and drug bust-by operations. Even if we can assume that he can prove all of those at trial, they're insufficient as a matter of law to create a genuine issue of material fact because under Lacey v. Maricopa County, in order to demonstrate disparate treatment or an equal protection issue, there has to be disparate treatment amongst similarly situated individuals. And the fact pattern in this case has no similarity to warrant arrests or drug bust-by operations. And so that — it's a very fine distinction, but it is there, this difference between sufficiency to prove at trial and sufficiency— What case says that if the district court thinks there's a genuine issue of fact that can't be resolved at summary judgment, that that question alone, not talking about what's clearly established or anything else, just whether there is enough evidence for a genuine issue, that that can be appealed on a qualified immunity interlocutory appeal? What case says that? Well, again, Cunningham v. Gates. And then actually, in addition, if you look at to create a genuine issue of material fact. I think Cunningham v. Gates is a long time ago before the cases by the Supreme Court that are talked about in Anderson, so I'm not sure that's going to work for you. Well, so then again, I would point to Jeffers v. Gomez. And actually, the analysis was the same there regarding circumstantial evidence. And what this court went on to hold is that an animus about sufficient evidence is not sufficient as a matter of law to create a genuine issue of material fact. And then the court actually went on to hold that qualified immunity was reviewable and then applied qualified immunity in that case. The next thing I want to address, Judge Friedland, is your question about the trunk check. If you're in Officer Richardson's position and all you have at that point is information about a potentially stolen vehicle and your knowledge about the relationship between stolen vehicles and weapons, your concern is safety. And in United States v. Hensley, the Supreme Court has said that officers can take reasonable steps to effectuate scene safety first. But for something that someone could reach, I mean, a locked trunk, no one can reach it. No one can grab a weapon from a locked trunk. In Katie v. Dombrowski, the United States Supreme Court said that a firearm in a locked and is a sufficient concern to public safety to justify a search. And in that circumstance, the individual in question was in custody when the vehicle was impounded and searched. Right, because in that instance, the concern is someone might get access to the trunk and pull a gun out. Correct. There are six police officers there. No one's going to run up to the trunk and pull out a key and open it and pull a gun out. There are six officers, but as the court also noted, there are a bunch of people milling around, including people wandering through the scene. But did they have keys to the trunk? At that point, it's not clear whether the trunk was locked. And the car was still running. So even if somebody wanted a firearm, they could have just jumped in and run away with the car itself. Well, they took the keys out of the car. No one's challenging that, as far as I can tell. Once they've taken the keys out of the car, I don't see how the locked trunk is an issue. Perhaps, but I think there's only a split second between when those things occur. And I recognize I'm out of time. Um, so does the court have any more questions? No. Okay. No, thank you. Thank you very much, counsel. Thank you both for your briefing and argument. This matter is submitted and we are adjourned.
judges: OWENS, FRIEDLAND, Rayes